UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK ALLEN, Individually And On Behalf Of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>PIXARBIO CORPORATION f/k/a/ BMP HOLDINGS INC., and FRANCIS M. REYNOLDS,<br><br>　　　　　　　　　　Defendants. | Civil Action: 2:17-cv-00496 (CCC-scm)<br><br>Hon. Claire C. Cecchi<br><br>Motion Date: May 1, 2017 |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF MARVIN AND JACQUELINE BECKER FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

**INTRODUCTION**

Movant Marvin and Jacqueline Becker (hereinafter, "Movant") respectfully submits this memorandum of law in further support of their motion (i) for appointment as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and (ii) for approval of the selection of the law firm of Gainey McKenna & Egleston as lead counsel for the Class, and in opposition to the competing motion.

Presently pending before the Court are two (2) motions for appointment of lead plaintiff pursuant to the PSLRA filed by purchasers of PixarBio Corporation ("PixarBio" or the "Company"). The question presently before the Court is which of these movants qualifies as the "most adequate plaintiff" – *i.e.*, the plaintiff "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. §78u-4(a)(3)(B)(i); *In re Cendant Corp. Litig.*, 264

F.3d 201, 262 (3d Cir. 2001) ("In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status.").

The PSLRA directs a court to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule 23"). 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Marvin and Jacqueline Becker are the most adequate plaintiffs.

While the other movants (Mark Allen ("Allen"), Salvatore Rappa ("Rappa") and Moeed Azam ("Azam")) purportedly claim a larger financial interest than Marvin and Jacqueline Becker, a review of their papers reveals that (1) they are a cobbled-together group of unrelated plaintiffs, (2) Azam is an atypical plaintiff because he has been a member of the Clinical Advisory Board at PixarBio since May 2016 (three (3) months prior to his purchase of PixarBio stock) and is affiliated with Defendant Francis M. Reynolds ("Reynolds") – the main defendant in the action; and (3) counsel for the movants Allen and Rappa has admitted that these two unrelated plaintiffs did not purchase their PixarBio shares pursuant to the Private Placement (*see* Dkt. 5-2 at p. 5 ("Movants Mark Allen and Salvatore Rappa […] purchased 24,496 shares of PixarBio during the Class Period . . . ."). Therefore, as a result of Azam's lack of typicality, this lawyer-driven group is inappropriate and should not be appointed lead plaintiff.

## ARGUMENT

### I.   MOVANT MOOED AZAM IS INADEQUATE AND ATYPICAL

Rule 23's adequacy requirement mandates that representative parties must be able to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). In particular, a lead plaintiff must not have interests "antagonistic to the class that he seeks to represent." *See Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010).

2

Movant Azam has been a member of the Clinical Advisory Board at PixarBio since May 2016. Azam became a member of the Defendants' Clinical Advisory Board during the Class Period and before he purchased his PixarBio shares. *See* Exhibit 1 to the Declaration of Thomas J. McKenna in Further Support of Marvin and Jacqueline Becker's Motion to be Appointed Lead Plaintiff and for Approval of their Selection of Lead Counsel ("McKenna Decl."). Further, on November 25, 2016, PixarBio filed with the United States Securities and Exchange Commission ("SEC") a Form S-1 ("Prospectus"). This Prospectus related to the resale of 78,529,976 issued and outstanding shares of PixarBio common stock by the "seller security holders." The Prospectus also included 4,001,767 shares to be issued to the "selling security holders" only if and when they exercised warrants already held by them. The "selling security holders" offered the shares of PixarBio stock being covered by the Prospectus at a price based upon the average of the high and low prices per share of the Company's common stock as reported on the OTCQB Venture Market on the date of the sale for the duration of the offering. Movant Azam was one of the "selling security holders" selling his shares through this Prospectus. *See* Ex. 2 at p. 27 to the McKenna Decl.

In addition, movant Azam has entered into a Consulting Agreement with the Company (*see* Ex 2 at p. 61 to McKenna Decl.). Movant Azam cannot adequately represent the class while he maintains an ongoing professional and financial relationship with Defendants. His relationship with the Defendants makes him atypical and is likely to be exploited by the Defendants to the detriment of the Class. Azam's conflict of interest should not be allowed to prejudice the rest of the class's ability to achieve a full and fair recovery in this litigation. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (noting that

presumption of lead plaintiff status may be rebutted when there is "specific support in evidence of the existence of an actual or potential conflict of interest").

Where the Court can avoid embroiling itself in these issues through appointment of an alternative lead plaintiff, there is no reason to bog down this litigation unnecessarily. The interests of the Class are better protected by appointment of a lead plaintiff like Marvin and Jacqueline Becker who will not be subject to these unique defenses.

For example, in *In re Peregrine Sys., Inc. Sec. Litig.*, the court found that an individual, and therefore the movant group in which he was a proposed member, was not able to act as effective lead plaintiffs because, *inter alia*, the individual had relationships with the defendant company that "at the very least, create[d] the appearance that they were not able to adequately investigate and prosecute this action on behalf of the absent members of the class." 2002 WL 32769239 at *8 (S.D. Cal. 2002). Furthermore, the court in *Peregrine* found that declarations stating movants did not rely on non-public information in making the decision to exchange defendant company's securities were "insufficient to demonstrate the absences of such issues unique to it which may sidetrack litigation at a later stage." *Id.*, 2002 WL 32769239 at *6. The submitted declarations were insufficient because they were "devoid of any information regarding the information on which movant did rely in obtaining its shares [and] were insufficient to establish compliance with Rule 23." *Id.*; *see also Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102 (N.D. Cal. 2001) (court denied appointment of movant for lead plaintiff because it submitted conclusory declarations that stated it did not rely on non-public information in making its decision to exchange defendant company's securities; the declarations were insufficient because they were devoid of any information regarding the information on which movant did rely in order to comply with Rule 23). Movant Azam claims are atypical of those of the Class

and he would be unable to fairly and adequately represent the class without unnecessary complications and distractions.

> "Whether the information to which [Azam] had access would be relevant to a decision to purchase [PixarBio] securities, and whether [Azam] actually relied on such information in his decision to purchase, are difficult factual questions which cannot be resolved at this stage of litigation. However, whether these defenses will be successful is of no matter. The fact that [Azam] will be subject to such defenses renders [his] claims atypical of other class members."

*Peregrine Sys.*, 2002 WL 32769239 at *7 (quoting *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)); *see also Critical Path*, 156 F. Supp. 2d 1102. Movant Azam would be required to devote considerable time to rebut the claim that his purchase was not based on non-public information he obtained through his membership on the Defendants' Clinical Advisory Board and through his Consultancy Agreement. *See Landry*, 123 F.R.D. at 476; *see also Cohen v. Laiti*, 98 F.R.D. 581, 583-84 (E.D.N.Y. 1983) (the court refused to certify class where plaintiff's investment decisions were based on information supplied by friends and associates).

## II. MOVANTS ALLEN, RAPPA, AND AZAM ARE AN ARTIFICIAL GROUP CREATED BY THEIR COUNSEL FOR THE IMPROPER PURPOSE OF AGGREGATING LOSSES

The Allen, Rappa, and Azam group was created by counsel for a single improper purpose: to aggregate losses and get their counsel appointed lead counsel for the proposed class. While the PSLRA permits groups of investors to serve as lead plaintiff (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)), courts require that "the group must be capable of fairly and adequately protecting the purported class's interests." *In re Opnext, Inc. Sec. Litig.*, Civ. A. No. 08-920 (JAP), 2008 WL 3285732, at *2 (D.N.J. Aug. 7, 2008) (citing *Cendant*, 264 F.3d at 266.). "To determine if a group could fairly and adequately represent those interests, a court should consider (1) 'whether the individuals in question had a pre-existing relationship [; (2)] the extent of that

5

relationship [; (3)] whether the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff status [; and (4)] whether the group is too large to adequately represent the Class.'" *Id.*, at \*3 (quoting *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 636–37 (D.N.J. 2002)).

Therefore, purported groups are rejected if it appears that the creation of the group was solely for a lead plaintiff application. *Cendant*, 264 F.3d at 267 ("If, for example, a court were to determine that the movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude . . . that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."). Additionally, courts have also considered factors in assessing the suitability of such groups such as whether they have a decision-making structure in place and whether they are cohesive enough to adequately control the litigation and supervise counsel. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001).

Movants Allen, Rappa, and Azam have not provided a single piece of evidence demonstrating that they had a preexisting relationship prior to the filing of this action. It is not surprising that movants Allen, Rappa, and Azam fail to explain their pre-litigation relationship because it appears they do not have one. Allen, Rappa, and Azam have also failed to demonstrate to the Court that it can control their attorneys and the litigation in an organized, cohesive manner. Therefore, their improper aggregation of losses should be denied.

While Marvin and Jacqueline Becker respectfully submit that the Allen, Rappa, and Azam group has failed to trigger the "most adequate plaintiff" presumption for the reasons detailed herein, upon a determination that the group is inadequate to serve as lead plaintiff, this Court should deny their motion in its entirety and should not evaluate each individual member

separately. *See Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 4, 2008) ("The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was put together. Given no evidence of cohesiveness, we are not convinced that the Farrukh Group will adequately represent this class."); *see also Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Texas 2009) ("Additionally, the Buettgen Group's motion is undermined by the group's invitation to the Court to hand-pick one of its constituents to serve as lead plaintiff if the Court deems the Buettgen Group inappropriate. […] Such a 'willingness to abandon the group only suggests how loosely it was put together.'") (quoting *Tsirekidze*, 2008 WL 942273, at *3)).

## CONCLUSION

For the reasons set forth herein, Marvin and Jacqueline Becker's Motion for Lead Plaintiff should be granted and their selection of Gainey McKenna & Egleston as lead counsel approved. The other competing motion should be denied accordingly.

DATED:   April 17, 2017

                   Respectfully submitted,

                   **GAINEY McKENNA & EGLESTON**

                   By: */s/ Barry J. Gainey*
                    Barry J. Gainey (BJG 7560)
                   95 Route 17 South, Suite 310
                   Paramus, NJ 07652
                   Telephone: 201-225-9001
                   Facsimile: 201-225-9002
                   Email: bgainey@gme-law.com

                   -and-

                   Thomas J. McKenna
                   Gregory M. Egleston
                   440 Park Avenue South, 5th Floor
                   New York, NY 10016

Telephone: 212-983-1300
Facsimile: 212-983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gmelaw.com

***Proposed Lead Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 17, 2017.

*/s/ Barry Gainey*