**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the proposed Class*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK ALLEN and SALVATORE RAPPA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PIXARBIO CORPORATION f/k/a BMP HOLDINGS INC., FRANCIS M. REYNOLDS, KENNETH A. STROMSLAND, KATRIN HOLZHAUS, DAVID A. CASS, DEREK S. BRIDGES, and LAURA BARKER MORSE,<br><br>Defendants. | Case No. 2:17-cv-00496-CCC-SCM<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Motion Day: March 13, 2020<br><br>Hon. Claire C. Cecchi |
| MICHAEL SCHNIEDERS, derivatively on behalf of PIXARBIO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FRANCIS M. REYNOLDS, KATRIN HOLZHAUS, DAVID A. CASS, and LAURA BARKER MORSE,<br><br>Defendants,<br>and<br><br>PIXARBIO CORPORATION,<br><br>Nominal Defendant. | Case No. 2:17-cv-02987 |

## TABLE OF CONTENTS

I.        INTRODUCTION ................................................................................................... 1

II.       BACKGROUND ..................................................................................................... 4

    A.    Procedural Background – The Securities Class Action ........................................ 4

    B.    Procedural Background – The Derivative Action.................................................. 6

    C.    Settlement Discussions ........................................................................................ 7

III.      ARGUMENT ........................................................................................................... 7

    A.    The Settlement Should Be Finally Approved ....................................................... 7

        1.    Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate.... 7

        2.    The Class Meets the Requirements of Rule 23(a) ..................................... 8

        3.    The Class Meets the Requirements of Rule 23(b)(3)................................. 9

        4.    Notice Was Provided in Accordance with the Court's Preliminary
             Approval Order ......................................................................................... 9

        5.    The Settlement Meets the *Girsh* Factors.................................................. 10

        6.    The Parties' Arm's-Length Negotiations Favors Final Approval............. 18

        7.    Class Counsel's Experience Favors Final Approval................................. 18

    B.    The Court Should Approve the Plan of Allocation............................................... 20

IV.       CONCLUSION..................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997)..................................................................................... 9

*Bell Atl. Corp. v. Bolger,*
  2 F.3d 1304 (3d Cir. 1993) ......................................................................... 11

*Boyd v. Coventry Health Care Inc.,*
  299 F.R.D. 451 (D. Md. 2014)..................................................................... 20

*Cammer v. Bloom,*
  711 F. Supp. 1264 (D.N.J. 1989) ................................................................ 16

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ....................................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  134 S. Ct. 2398 (2014)................................................................................ 16

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ................................................................. 17, 20

*In re Chambers Dev. Sec. Litig.,*
  912 F. Supp. 822 (W.D. Pa. 1995).............................................................. 15

*In re Charter Commc'ns, Inc., Sec. Litig.,*
  No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ............................... 17

*In re Datatec Sys., Inc. Sec. Litig.,*
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)....................................... 20

*In re Fab Universal Corp. S'holder Derivative Litig.,*
  148 F. Supp. 3d 277 (S.D.N.Y. 2015) .................................................................. 3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................... 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
  55 F.3d 768 (3d Cir. 1995) .......................................................................... 18

*In re Genta Sec. Litig.,*
  No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008)........................... 10, 13

iii

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .................................................... 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................... 21

*In re Heelys, Inc. Derivative Litig.*,
   No. 3:07-CV-1682-K, 2009 WL 10704478 (N.D. Tex. Nov. 17, 2009) ................................... 3

*In re Ikon Office Sols., Inc., Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000).................................................... 11, 14, 20

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................... 12

*In re Johnson & Johnson Derivative Litig.*,
   900 F. Supp. 2d 467 (D.N.J. 2012) .................................................... 13

*In re Merck & Co., Inc. Vytorin Erisa Litig.*,
   No. CIV.A. 08-CV-285DMC, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ................................... 20

*In re Nat. Football League Players' Concussion Injury Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015).................................................... 15

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) .................................................... 8

*In re Nature's Sunshine Prod., Inc.*,
   No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006) ....................................... 19

*In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*,
   251 F.R.D. 656 (D. Utah 2008) .................................................... 16

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 17

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
   176 F.R.D. 158 (E.D. Pa. 1997).................................................... 11

*In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP,
   2014 WL 3291230 (S.D.N.Y. July 8, 2014) .................................................... 14

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................... 11

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003).................................................... 18

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................... 19

*Krogman v. Sterritt*,
    202 F.R.D. 467 (N.D. Tex. 2001) ............................................................. 16

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............................ 19

*Petrie v. Elec. Game Card, Inc.*,
    308 F.R.D. 336 (C.D. Cal. 2015) .............................................................. 16

*Schuler v. Medicines Co.*,
    No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016) ..................... 12

*Serio v. Wachovia Sec., LLC*,
    No. CIV.A. 06-4681(MF), 2009 WL 900167 (D.N.J. Mar. 31, 2009) ................... 12

*Singleton v. First Student Mgmt. LLC*,
    No. CIV.A. 13-1744 JEI, 2014 WL 3865853 (D.N.J. Aug. 6, 2014) ................... 10

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ................................................................. 11

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ................................................................ 18

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................ 19

## Rules

Fed. R. Civ. P. 23 ........................................................................... *passim*

Fed. R. Civ. P. 23.1 ........................................................................... 3

## Other Authorities

Manual for Complex Litigation (Third) §30.42 (1995) .............................................. 18

Lead Plaintiffs Mark Allen and Salvatore Rappa, Named Plaintiffs Marvin Becker and Jacqueline Becker ("Class Plaintiffs"), and Michael Schnieders ("Derivative Plaintiff," and with Class Plaintiffs, "Plaintiffs") respectfully submit this memorandum in support of their Motion For Final Approval of Class Action Settlement and Plan of Allocation.[1]

## I.    <u>INTRODUCTION</u>

The Parties reached a settlement to resolve the claims in the above-captioned securities class action (the "Securities Class Action") as well as the above-captioned shareholder derivative action (the "Derivative Action," and with the Securities Class Action, the "Actions") for $750,000 plus any remaining funds defined as the Additional Settlement Amount (the "Settlement"). The Settlement recovers 6.82% of damages despite substantial risk.[2] By this motion, Plaintiffs seek final approval of the Settlement of both Actions. If approved, the Settlement will completely dispose of the Actions.

The Settlement, reached after substantive settlement discussions and a mediation before Jed Melnick, Esq. of JAMS, is a highly favorable result for the Settlement Class[3] and PixarBio

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement dated September 4, 2019 (the "Stipulation") (Dkt. No. 132).

[2] Although the Parties are hopeful that the Additional Settlement Amount will provide supplemental consideration to the Settlement Class Members, considering that the Parties at present do not know the exact amount of the Additional Settlement Amount, for the sake of simplicity the measure of recovery of the Settlement discussed herein only includes the $750,000 guaranteed cash settlement. With the recovery of the Additional Settlement Amount, the recovery as percentage of damages will increase.

[3] The "Settlement Class" means all persons and entities other than Defendants and their affiliates who purchased or acquired PixarBio securities: (1) in an offering carried out continuously beginning in December 2015; (2) pursuant and/or traceable to the Company's private placement that closed on October 30, 2016; and/or (3) publicly traded on the open market between October 31, 2016 and January 23, 2017, both dates inclusive. Excluded from the Settlement Class are Defendants and their immediate families, the officers and directors of PixarBio at all relevant times, their legal representatives, heirs, successors or assigns, and any entity in which Defendants

Corporation ("PixarBio" or the "Company"). The arm's-length negotiations between counsel resulted in the Settlement of $750,000, which represents 6.82% of the Settlement Class's total damages, plus any funds remaining in the Additional Settlement Amount. This is a reasonable result for the Settlement Class in light of several obstacles Plaintiffs faced, including: the amount of potentially recoverable damages; Defendants' potential defenses; the risks of prosecuting this litigation through trial; and any appeals. There is also substantial danger that there would be no remaining funds available for Settlement Class Members given the ongoing actions *Securities and Exchange Commission v. PixarBio Corp, et al*., Case No. 1:18-cv-10797 (D. Mass) (the "SEC Action") and *United States of America v. Reynolds, et al*., Case No. 18-CR-10154 (D. Mass) (the "Criminal Action").[4]

The methods Plaintiffs used to communicate notice – the Notice of Pendency and Proposed Settlement of Class Action and Derivative Action (the "Long Notice"), the Summary Notice of Pendency and Proposed Class Action and Derivative Action Settlement [5] (the "Summary Notice"), and the Postcard Notice (together with the Long Notice and Summary Notice, the "Notice") – each closely followed what is routinely used to communicate notice in securities class actions and

---

have or had a controlling interest. Also excluded from the Settlement Class are those persons who file valid and timely requests for exclusion in accordance with the Court's Order Granting Class Plaintiffs' Motion for Preliminary Approval of Class Action and Derivative Action Settlement ("Preliminary Approval Order") (Dkt. No. 135).

[4] Defense costs and fees incurred in the SEC Action and the Criminal Action are being paid from the same insurance policies triggered by the Actions. PixarBio and Francis M. Reynolds ("Reynolds") (defendants in the Actions), and Kenneth A. Stromsland ("Stromsland"), (defendant in the Securities Class Action) are also defendants in the SEC Action and the Criminal Action.

[5] Even though the Derivative Action is not a putative class action, notice still needed to be disseminated to PixarBio shareholders pursuant to Fed. R. Civ. P. Rule 23.1(c), which was done.

surpassed what is usually done for notice in derivative actions.[6] These various forms of notice also satisfied Fed. R. Civ. P. 23 and 23.1. Therefore, the Court should find that notice was properly disseminated in these actions.[7]

For final approval of a settlement, courts must determine that it is "fair, reasonable, and adequate" to the class. Fed. R. Civ. P. 23(e). That is, courts must consider whether the Class is getting adequate consideration for the release – and here, they plainly do. The Settlement is a reasonable result for the Class given the risks the Class faced.

The Court must also determine if Class Plaintiffs have adequately established a formula to distribute the Settlement. Courts approve plans of allocation if they are fair, reasonable, and adequate. Here, the Plan of Allocation was formulated by experienced counsel in consultation with a damages consultant, comports with applicable legal principles, and in no way favors Class Plaintiffs over other members of the Class. Accordingly, the Court should approve the Plan of Allocation.

Pursuant to the Preliminary Approval Order, 415 copies of the Court-approved Postcard Notice were mailed to potential Class Members and their nominees. *See* Declaration of Josephine Bravata Concerning (A) Mailing Of The Postcard Notice; (B) Publication Of The Summary

---

[6] Typical notice plans in derivative action settlements involve issuing a press release, filing a Form 8-K with the SEC, and/or posting to the company's and/or plaintiff's counsel's website. *See, e.g.*, *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 282 (S.D.N.Y. 2015) (notice entailed publication in *Investor's Business Daily* and posting on the Company's and Lead Counsel's website); *In re Heelys, Inc. Derivative Litig.*, No. 3:07-CV-1682-K, 2009 WL 10704478, at *5 (N.D. Tex. Nov. 17, 2009) (notice acceptable when published in *Investor's Business Daily*, attached to a Form 8-K filed with the SEC, and published on the company's and plaintiffs' counsel's website). Here, the PixarBio shareholders were directly sent the Postcard Notice and the Summary Notice was disseminated on *GlobeNewswire* and also printed in *Investor's Business Daily.*

[7] The Proof of Claim and Release Form ("Claim Form") to be used by members of the proposed class to submit their claims is found at Exhibit A-2 of the Stipulation, Dkt. No. 132-3.

Notice; And (C) Report On Requests For Exclusion And Objections ("Bravata Decl." or "Bravata Declaration"), Exhibit 1 to the Declaration of Laurence M. Rosen in Support of Motions for: (1) Final Approval of Proposed Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Lead Plaintiffs, Named Plaintiffs, and Derivative Plaintiff ("Rosen Decl." or "Rosen Declaration"), ¶6. The Claims Administrator, Strategic Claims Services ("SCS"), also contacted more than a thousand brokerage firms and other institutions believed likely to have names and addresses of potential Class Members to alert them of the Settlement or provide SCS with their contact information to mail Postcard Notice. *Id.* at ¶4. Additionally, SCS was informed that a nominee emailed 104 of their customers about the settlement with direct links to the Notice and Claim Form on SCS's website. *Id.* Additionally, 11 copies of the Summary Notice were emailed to class members for which SCS obtained email addresses. *Id.* ¶6 fn2. February 21, 2020 is the deadline for requests for exclusion and objections to the Settlement. As of February 13, 2020, the date the Bravata Declaration was finalized, there have been no requests for exclusion or objections to any aspect of the Settlement have been received. *Id.*, at ¶¶ 12-13.

## II.   BACKGROUND[8]

### A.   Procedural Background – The Securities Class Action

The Securities Class Action was commenced on January 25, 2015, with the filing of the initial complaint alleging violations of the Securities Exchange Act of 1934 against Defendants PixarBio and Reynolds. (Dkt. No. 1). On January 2, 2018, the Court appointed Allen and Rappa as Lead Plaintiffs and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 35).

---

[8] The Rosen Declaration provides a detailed account of the procedural histories of the Securities Class Action and the Derivative Action. The background of the Actions provided herein is a summary of their procedural histories.

On March 2, 2018, Class Plaintiffs filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (Dkt. No. 41). On April 27, 2018, Defendants PixarBio and Reynolds requested a 30-day extension to file a response to the Amended Complaint. The Court approved this request. (Dkt. No. 51).

After learning of additional developments, including the Criminal Action filed against PixarBio, Reynolds, and PixarBio's executive Stromsland, as well as Reynold's friend, M. Jay Herod, as well as the filing of the SEC Action, Class Plaintiffs requested that they be granted leave to amend their complaint again. This request was granted. (Dkt. No. 53).

On June 29, 2018, Class Plaintiffs filed their motion for leave to file a second amended complaint (Dkt. No. 56), which the Court granted on July 18, 2018. (Dkt. No. 57). On July 23, 2018, Class Plaintiffs filed the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Second Amended Complaint") (Dkt. No. 58). The Second Amended Complaint also included Stromsland, Katrin Holzhaus ("Holzhaus"), David A, Cass ("Cass"), Derek S. Bridges ("Bridges"), and Laura Barker Morse ("Morse") as defendants.

On August 10, 2018, Reynolds retained new counsel and filed a motion to stay the Securities Class Action. (Dkt. No. 64). This motion was terminated for failing to abide by local rules regarding a conferral requirement. However, a few days later, Class Plaintiffs and Reynolds filed a letter to Judge Steven C. Mannion outlining their positions regarding a stay. (Dkt. No. 67). A telephonic conference with Judge Mannion was held on August 23, 2018 to discuss the stay and the interplay with the criminal proceedings against PixarBio, Reynolds, and Stromsland. On October 26, 2018, all parties participated on a telephonic conference with Judge Mannion where a schedule for the motion to stay was further discussed.

On November 7, 2018, submitted to the Court that discovery should be stayed pursuant to the PSLRA's discovery stay. (Dkt. Nos. 103-106). On November 15, 2018, after discussions with Defendants about potential settlement, Class Plaintiffs decided that they would consent to a stay of discovery pursuant to the PSLRA. (Dkt. No. 108). Accordingly, on November 19, 2018, the Court stayed discovery pending the resolution of the motions to dismiss. (Dkt. No. 109).

While the motion to stay and motions to stay discovery pursuant to the PSLRA were being briefed, Defendants filed motions to dismiss. These motions to dismiss were fully briefed on January 2, 2019. The Parties reached the Settlement prior to a decision on the motions to dismiss.

### B.      Procedural Background – The Derivative Action

On May 2, 2017, Derivative Plaintiff filed a verified shareholder derivative complaint in the Derivative Action against Reynolds, Holzhaus, Cass, and Morse on behalf of nominal defendant PixarBio. The Derivative Action alleges that defendants named therein made and/or caused the Company to make the same violations of the federal securities laws and asserts claims for breach of fiduciary duties, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets.

On October 5, 2017, the parties to the Derivative Action filed a Stipulated Temporary Stay of Proceedings, agreeing to stay the Derivative Action pending an order denying any portion of a motion to dismiss or the entry of a final order dismissing the Securities Class Action. (Dkt. No. 8 in Derivative Action). Judge Cecchi entered an order approving the stay of the Derivative Action. (Dkt. No. 10 in Derivative Action).

Derivative Counsel drafted an amended shareholder derivative complaint ("Amended Derivative Complaint"). However, after engaging in discussions about potential settlement, Derivative Plaintiff chose to not to file the Amended Derivative Complaint unless and until settlement negotiations were to reach an impasse.

C.      **Settlement Discussions**

On February 28, 2019, all Parties in both the Securities Class Action and the Derivative Action, through their respective counsel, attended a mediation session with Jed Melnick, Esq. of JAMS. Lead Plaintiffs Allen and Rappa attended the mediation in person. Prior to the mediation session, the Parties exchanged detailed mediation statements outlining their position of the case. A settlement was not reached at this mediation session, but extensive negotiations continued over several months with the assistance of Mr. Melnick.

On June 19, 2019, the Parties reached a settlement in principle to resolve both of the Actions and notified the Court of the settlement on the following day. (Dkt. No. 128). On June 21, 2019, Judge Cecchi entered an order administratively terminating the Securities Class Action for 60 days to allow time for the Parties to document the Settlement. (Dkt. No. 129). Plaintiffs moved for preliminary approval of the Settlement on September 4, 2019 (Dkt. No. 133), which the Court granted on November 18, 2019. (Dkt. No. 135).

III.    **ARGUMENT**

A.      **The Settlement Should Be Finally Approved**

1.      **Certification of the Class Pursuant to Fed. R. Civ. P. 23 is Appropriate**

In the Preliminary Approval Order, the Court preliminarily certified a Class set out in footnote 3, above (Dkt. No. 135, ¶2). As described in Class Plaintiffs' memorandum in support of preliminary approval of the Settlement (Dkt. No. 133-1), and in this memorandum, certification of the Class under Fed. R. Civ. P. 23 is appropriate. No changes have occurred since the issuance of the Preliminary Approval Order. Thus, the Court should finally certify this as a class action for purposes of the Settlement.

### 2.     The Class Meets the Requirements of Rule 23(a)

First, the Class is sufficiently numerous. The Claims Administrator sent 415 Postcard Notices to potential Settlement Class Members. Bravata Decl. ¶ 6. SCS was also informed that a nominee emailed 104 of their customers about the settlement with direct links to the Notice and Claim Form on SCS's website. *Id.* This is more than sufficient to satisfy numerosity. *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016), *as amended* (May 2, 2016) ("numerosity is generally satisfied if there are more than 40 class members").

Second, all of the conduct alleged in the Second Amended Complaint was common to all members of the Class. All members of the Class purchased PixarBio securities during the Class Period. Therefore, all of Defendants' alleged misrepresentations and omissions were made to each member of the Class.

Third, all of the Class' claims are interrelated, and Class Plaintiffs' claims are typical of those of the rest of the class. All Class Members allegedly suffered losses because they bought PixarBio securities at artificially inflated prices and were damaged when the true facts were revealed.

Fourth, Class Plaintiffs are adequate representatives of the Class. Class Plaintiffs have no conflicts with the other Class Members and retained counsel with vast experience in the prosecution of securities class actions. As detailed in the Declarations of Mark Allen and Salvatore Rappa, attached as Exhibits 6 and 7 to the Rosen Decl., Lead Plaintiffs Allen and Rappa have been actively involved in the case, maintaining regular communication with Lead Counsel, attending the mediation in person, and considering the Class's best interests at all times. Similarly, Named Plaintiffs Marvin and Jacqueline Becker have been involved and well informed about the status of the Securities Class Action. *See* Joint Declaration of Jacqueline Becker and Marvin Becker

attached as Exhibit 8 of the Rosen Decl. Due to Class Plaintiffs' diligence and retention of experienced counsel, their representation is adequate.

### 3.     The Class Meets the Requirements of Rule 23(b)(3)

Rule 23(b)(3) permits class certification where, in addition to the requirements of Rule 23(a), common questions of law or fact predominate over any individual question and a class action is superior to other available means of adjudication. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 607 (1997). This standard is easily met here, as it is in most securities class actions. The root of the class action - whether Defendants' publicly disseminated press releases and SEC filings omitted and/or misrepresented material facts - is the central issue and predominates over any theoretical individual issue that may arise. Additionally, the class action mechanism is the best method of resolving this suit. Since the controversy for each class member is identical, adjudicating in one suit and one forum is the most economical means of resolving this matter. Moreover, most of the Class Members' damages are too small to make it feasible to incur substantial litigation costs that would exceed any potential recovery.

### 4.     Notice Was Provided in Accordance with the Court's Preliminary Approval Order

Class Plaintiffs proposed to provide notice to the class by either (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses or (b) causing the Postcard Notice, if no email address could be obtained, mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator (Preliminary Approval Order ¶13-14). The Summary Notice was also disseminated on *Globe Newswire* and printed once in *Investor's Business Daily*, (*id.*) ¶17. Class Plaintiff has fully complied with these requirements. Bravata Decl. ¶¶6, 9. The Long Notice, Claim Form, as well as other important settlement-related

documents, including the Stipulation and Preliminary Approval Order, were made available on SCS's website. *Id.* ¶11. Accordingly, the Notice program was sufficient.

**5.      The Settlement Meets the *Girsh* Factors**

In determining whether to grant final approval of class action settlements, courts in the Third Circuit will consider the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, No. CIV.A. 13-1744 JEI, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).

Courts throughout the country recognize that securities class actions are exceptionally complex, lengthy, and risky. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("A securities case, by its very nature, is a complex animal") (internal quotations omitted); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("federal courts [...] have long recognized that such litigation is notably difficult and notoriously uncertain") (internal quotations omitted); *In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive.").

At the time of the settlement, while Defendants' several motions to dismiss were fully briefed and pending, Class Plaintiffs faced difficult challenges to succeed on their claims. An examination of the *Girsh* factors thus reveals that final settlement approval is warranted.

### a.   The First *Girsh* Factor Favors Final Approval

The first *Girsh* factor supports approval of the settlement of both Actions. "Large class actions alleging securities fraud" are "inherently complicated." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000). This case is no exception. At the end of the Class Period, there were over 80 million shares of PixarBio securities outstanding, demonstrating the large number of potential Settlement Class Members. Furthermore, securities class actions, as well as derivative actions, are notoriously complex and expensive to litigate as they require extensive investigations, discovery, and experts to opine on class certification and damages.

### b.   The Second *Girsh* Factor Favors Final Approval

The second *Girsh* factor "gauge[s] whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Case law in this Circuit establishes that a relatively low objection rate supports approval of a proposed settlement. *See E.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) (holding that the absence of, or a small number of objections, is strong evidence that the settlement is fair and reasonable); *see also In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (holding that "relatively low objection rate militates strongly in favor of approval of the settlement").

Here, 415 Postcard Notices were mailed out to potential class members. Bravata Decl. ¶6. Additionally, 104 potential class members were notified by a nominee of the settlement via email with a link to the Notice and Claim Form on SCS's website. *Id.* Summary Notice was also disseminated as the Court directed. *Id.*, ¶ As of February 13, 2020, there have been no requests for

exclusion or objections to any aspect of the Settlement. *Id*., ¶¶12-13. The deadline to object to or to request exclusion from the Settlement is February 21, 2020. *Id*.[9]

The fact that no exclusions or objections were submitted to date supports final approval of this Settlement. *Serio v. Wachovia Sec., LLC*, No. CIV.A. 06-4681(MF), 2009 WL 900167, at *7 (D.N.J. Mar. 31, 2009) ("the low percentage of objections is evidence, in and of itself, that the Settlement should be approved because the class believes the settlement is fair."). This factor accordingly also strongly favors final approval of the Settlement.

### c.  The Third *Girsh* Factor Favors Final Approval

The third *Girsh* factor supports approval. Though discovery in the Securities Class Action was stayed by the PSLRA and the Derivative Action, including discovery, was also temporarily stayed per an order approving a stipulation, Plaintiffs conducted an extensive pre-discovery investigation and prepared detailed and thorough amended complaints in the Actions (although Derivative Plaintiff did not file his amended pleading given pending settlement negotiations). Class Plaintiffs also retained an expert to provide a damages estimate and retained an investigator to assist on the pleadings. Such an investigation and undertaking gave Plaintiffs a clear understanding of the merits of the Securities Class Action and the Derivative Action. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though PSLRA had prevented discovery from ever taking place). Courts in this Circuit routinely approve class action settlements before the commencement of formal discovery. *See, e.g., Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (approving settlement prior to discovery because of

---

[9] If Class Plaintiffs receive any objections or exclusions, Class Plaintiffs will address them in their reply papers in support of final approval.

counsel's investigation); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties").

Briefing the motions to dismiss also provided Class Plaintiffs with an understanding of the defenses that Defendants would advance at trial. *See, e.g.*, *In re Genta Securities Litigation*, 2008 WL 2229843, at *2 ("The motion to dismiss resolved many of the issues raised in the Amended Complaint, leaving Lead Plaintiffs and Defendants … with a solid understanding of the strengths and weaknesses of their respective positions."). Additionally, in preparing for and attending the mediation, the Parties exchanged mediation statements detailing the Parties' positions which allowed them to better evaluate the Actions. Accordingly, at the time that the Settlement was reached, Plaintiffs were fully informed and armed with the strengths and potential weaknesses in their case.

### d.  The Fourth, Fifth and Sixth *Girsh* Factors Favor Final Approval

The fourth, fifth, and sixth *Girsh* factors also support final approval. The Parties reached the Settlement prior to the Court's ruling on Defendants' motions to dismiss the Second Amended Complaint in the Securities Class Action. Although Class Plaintiffs believe their claims were strong, particularly in light of the existence of the SEC Action and Criminal Action, there is no guarantee that Class Plaintiffs would be able to survive each of the motions to dismiss and be able to overcome many hurdles in this litigation such as class certification, summary judgment, and trial. Although Class Plaintiffs believe that they could satisfy falsity and scienter, particularly given the existence of the SEC Action and Criminal Action, Class Plaintiffs faced hurdles to prove loss causation and market efficiency at the class certification stage. Class Plaintiffs' damage expert estimated that the Settlement Class's maximum damages are approximately $11 million.

Defendants, on the other hand, would continue to argue during the continuation of litigation that the Class's damages are substantially less and dispute whether there are any damages at all. Further, Class Plaintiffs understood that it would be more of a challenge to prove liability against defendants Holzhaus, Cass, Morse, and Bridges, who were not named in the SEC Action or the Criminal Action.

Similarly, Derivative Plaintiff would have had a substantial challenge facing the anticipated motion to dismiss on the grounds of failure to make a pre-suit demand on PixarBio's board of directors. *See Ikon,* 194 F.R.D. at 190 (court approving derivative settlement in part due to the significant risk of the losing a motion to dismiss on the demand requirement.). This would have been a hurdle to overcome before the Derivative Action could proceed on the merits.

As to the fourth and fifth *Girsh* factors, namely the risk of establishing liability and the risk of establishing damages, Class Plaintiffs did not have an easy road. If Class Plaintiffs defeated all of the pending motions to dismiss, the parties would have had to retain experts to testify on the issues of loss causation and damages. Satisfying this obstacle could be difficult and potentially risk for Class Plaintiffs. *In re Pfizer Inc. Sec. Litig.*, No. 4-CV-9866-LTS-HBP, 2014 WL 3291230, at *3 (S.D.N.Y. July 8, 2014), *vacated,* 819 F.3d 642 (2d Cir. 2016) (granting summary judgment because "Plaintiffs' failure to proffer admissible [expert] loss causation and damages evidence is fatal to Plaintiffs' claims."). In Class Counsel's experience, these experts would cost at least several hundred thousand dollars.

Following the conclusion of discovery, Class Plaintiffs would have faced summary judgment motions. Summary judgment motions can be difficult to defeat. First, experts are both necessary and vulnerable to *Daubert* challenges. *See Pfizer,* 2014 WL 3291230 at *2. Any successful *Daubert* motion against a critical expert may have left Class Plaintiffs unable to

withstand summary judgment. If Class Plaintiffs survived summary judgment, the parties would try the case at great cost. Because of inevitably conflicting expert testimony on market efficiency, loss causation, and damages, the trial would in some measure be a battle of the experts. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally, In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 393 (E.D. Pa. 2015) ("[A] jury's acceptance of expert testimony is far from certain, regardless of the expert's credentials [and] divergent expert testimony leads inevitably to a battle of the experts.") (internal quotations omitted). There would be no certainty that Class Plaintiffs would succeed at trial and it would be a costly process.

Even if Class Plaintiffs were successful at trial, it would not necessarily be the end of litigation. Then, post-trial motions and the appeals could be filed. There is no guarantee that Class Plaintiffs' efforts would result in any recovery for the Class, let alone one as favorable as the Settlement, but it is guaranteed that it would be years before the Class saw any recovery at all. *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995) ("[I]n a case of this complexity, the end of that road might be miles and years away.").

Given that this Settlement recovers at least 6.82% of the Class's maximum damages, and potentially more from the Additional Settlement Amount, it is a reasonable result in light of the complexities of the claims as well as the significant reality that the existence of the SEC Action and the Criminal Action were draining any available insurance coverage that could be used to fund a recovery for the Settlement Class. Accordingly, the Settlement is a positive, guaranteed result for the Settlement Class that would likely not be available if the litigation were to proceed.

Finally, the sixth *Girsh* factor on its own supports final approval. To recover on a claim of securities fraud, a lead plaintiff must show that he relied on defendants' false statements. It is

legally impossible to provide direct reliance on a classwide basis. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014). Here, Class Plaintiffs would have been entitled to a presumption of reliance, however, only if they were able to show that PixarBio securities traded on an efficient market. *Id.*

Normally, actions involving large, closely-followed companies which trade on efficient markets are ones where class certification is granted. *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989). While most classes involving common stock are certified, however, PixarBio was traded on the OTC market. There is debate among courts whether the OTC is an efficient market, making this a potentially difficult hurdle for Class Plaintiffs to overcome. *See, e.g. Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 349 (C.D. Cal. 2015) ("Most courts have held that where a stock is traded—in an over-the-counter market … versus on a national exchange—is not dispositive as to whether the market for that stock is efficient."); *Krogman v. Sterritt*, 202 F.R.D. 467, 474 (N.D. Tex. 2001) (whether a stock trading on OTC is an efficient market depends on a case by case inquiry).

In any case, expert testimony is virtually a prerequisite to show market efficiency. *In re Nature's Sunshine Prod.'s Inc. Sec. Litig.*, 251 F.R.D. 656, 664 (D. Utah 2008) ("Defendants could have, and should have, provided an expert opinion of their own if they sought to challenge Dr. Hakala's conclusions"). This expert would likely cost well over $100,000. The Settlement avoids the risk that the Court and/or a jury would find that PixarBio securities did not trade in an efficient market.

### e. The Seventh, Eighth and Ninth *Girsh* Factors Favor Final Approval

The seventh, eighth, and ninth *Girsh* factors also support final approval. As described throughout, there was substantial risk that Plaintiffs would receive little or no recovery if litigations

continued to proceed. Not only were there numerous obstacles and risks to achieving a recovery through litigation and trial concerning liability and damages, but the SEC Action and Criminal Action provided another layer of complications and risk. The insurance policy triggered by the Actions was also being used to defend the SEC Action and Criminal Action. The expenses in those proceedings were substantial, and were quickly burning through any funds that would be able to compensate PixarBio shareholders at the time of the settlement discussions. Indeed, the policy has continued to be used during the trial of the Criminal Action after the Parties agreed to settlement terms. It was unlikely that Plaintiffs would be able to recover funds from the Defendants out-of-pocket. Reynolds and Stromsland faced a strong risk of incarceration, likely rendering them unable to pay a civil judgment, and the remaining individual defendants were more likely to not be found liable individually. The Settlement, by contrast, provides a guaranteed recovery for the shareholders. Given the additional risks present here, which are not typically present in ordinary securities class actions and derivative actions, the Settlement is thus an excellent guaranteed result.

In fact, depending on the conclusion of the SEC Action and Criminal Action, PixarBio shareholders may be able to recover further because they are entitled to any Additional Settlement Amount. Although the Parties are not sure whether there will be any money in this additional fund, the potential existence of this additional fund could increase the recovery to shareholders. The $750,000 Settlement on its own, however, falls well in line with other, similar settlements. *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving 6% recovery

of maximum damages). Accordingly, this proposed Settlement is an excellent result for Settlement Class Members and PixarBio shareholders.

### 6. The Parties' Arm's-Length Negotiations Favors Final Approval

Final approval of the Settlement is favored as it culminated after the parties, through capable counsel, engaged in hard-fought arm's-length negotiations. *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Manual for Complex Litigation (Third)* §30.42 (1995) (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery"). Indeed, it is "appropriate" to give "substantial weight to the recommendations of experienced attorneys" who have engaged in arm's-length negotiations. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) (lead counsel's "assessment of the settlement as fair and reasonable is entitled to considerable weight.").

The Parties engaged in an in-person mediation with Jed Melnick as well as numerous follow up communications with his assistance, which were hard-fought and often contentious. Mr. Melnick provided a declaration to support the fairness of the mediation process and the Settlement itself. *See* Exhibit 1 to Rosen Decl. Accordingly, the Settlement should be finally approved given the nature of the process the Parties underwent to reach a conclusion.

### 7. Class Counsel's Experience Favors Final Approval

Class Counsel is highly experienced in the area of securities litigation, allowing it to independently evaluate the Settlement. *See* Rosen Law's firm resume attached as Exhibit A to the Declaration of Laurence M. Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), Exhibit 3 to the Rosen Decl. The quality of Rosen Law's

work and securities knowledge has been recognized by courts in this District as well as courts around the country. *See, e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at \*21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at \*3 (C.D. Cal. Aug. 19, 2014)("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Nature's Sunshine Prod., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at \*2 (D. Utah Aug. 16, 2006) (Rosen Law is "qualified, experienced and able to vigorously conduct the proposed litigation.").

Additional Class Counsel, Gainey McKenna & Egleston ("GM&E") has been lead counsel or co-lead counsel in numerous shareholder actions and has produced substantial recoveries for shareholders. For example, GM&E was lead counsel in *Boyd, et al. v. Coventry Health, et al.*, Civil Action No.: 09-cv-2661 (D. Md.) (recovery of $3.6 million involving the company's stock in its 401(k) plan); *Morrison v. MoneyGram Int'l, Inc., et al.*, Civil Action No.: 08-cv-1121 (D. Minn.) (lead counsel producing a recovery of $4.5 million involving the company's stock in its 401(k) plan); *In re General Growth Properties, Inc. ERISA Litig.*, Master File No.: 08-cv-6680 (N.D. Ill.) (Co-Class Counsel for the Settlement Class producing a recovery of $5.75 million for the company's 401(k) plan).

Since being founded in the beginning of 2014, The Brown Law Firm, P.C. ("Brown Law"), counsel for Derivative Plaintiff, has focused almost entirely on representing plaintiffs in shareholder derivative litigation. Brown Law's successes include the global settlement of

derivative actions involving comScore, Inc. pending in state court in Virginia and the Southern District of New York, in which the settlement received Court-approval.  Brown Law was co-lead counsel for plaintiffs in state court in Virginia and was instrumental in obtaining a $10 million cash payment for comScore and causing comScore to institute a vast array of reforms to its corporate governance.  *In re comScore, Inc. Virginia S'holder Deriv. Litig.*, No. CL-2016-0009465 (Va. Cir. Ct., Fairfax Cnty.); *In re ComScore, Inc. S'holder Deriv. Litig.*, Case No. 1:16-cv-09855-JGK (S.D.N.Y.).

Accordingly, the Settlement was not reached lightly. Lead Counsel was fully able to understand the strengths and weaknesses of Lead Plaintiffs' claims, Defendants' defenses, and the risks of ongoing litigation. The recovery for the Class provides Class Members with a guaranteed significant monetary payment as opposed to a likely future recovery of zero. Compromise at this stage in the litigation will therefore best benefit the Class.

**B.     The Court Should Approve the Plan of Allocation**

The Long Notice contains the Plan of Allocation of settlement proceeds, detailing how the Settlement proceeds are to be divided among claiming Class Members. The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Merck & Co., Inc. Vytorin Erisa Litig.*, No. CIV.A. 08-CV-285DMC, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010) (*quoting Ikon,* 194 F.R.D. at 184); *see also Cendant*, 264 F.3d at 248.

"In evaluating a plan of allocation, the opinion of qualified counsel is entitled to significant respect. The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014); *see In re*

*Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (approving plan because it was "rational and consistent with Lead Plaintiffs' theory of the case.").

The Plan of Allocation, which is fully described in the Long Notice, was formulated by Class Counsel in consultation with an independent damages expert with the goal of reimbursing Class members in fair and reasonable manner. The Plan of Allocation employs accepted loss causation principles that recognize loss based on whether a class member held shares on the relevant dates when corrective disclosures caused a decline in PixarBio securities' stock price.

Class Counsel believes the Plan of Allocation fairly compensates Class Members and should be approved. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational' basis."). Accordingly, the Plan of Allocation is fair, reasonable and adequate and, warrants the Court's approval.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant final approval to the proposed Settlement and Plan of Allocation.

Dated: February 14, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

and

Leah Heifetz-Li (*pro hac vice*)

101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: lheifetz@rosenlegal.com

and

Erica L. Stone
Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: estone@rosenlegal.com
Email: pkim@rosenlegal.com

*Class Counsel for Lead Plaintiffs and the proposed Settlement Class*

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com

*Additional Class Counsel*

**PAWAR LAW GROUP P.C.**
Vik Pawar
6 South Street, Suite 201
Morristown, NJ 07960
Tel: (212) 571-0805
Fax: (212) 571-0938
Email: vikrantpawaresq@gmail.com

and

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
240 Townsend Square
Oyster Bay, NY 11771
Tel: (516) 922-5427
Fax: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

*Counsel for Derivative Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this on February 14, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence M. Rosen</u>